## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AUDRA E.,[1]                :  Case No.  2:22-cv-1815

                       :

       Plaintiff,        :  Magistrate Judge Peter B. Silvain, Jr.

                       :  (by full consent of the parties)

vs.                   :

                       :

COMMISSIONER OF THE SOCIAL   :

SECURITY ADMINISTRATION,    :

                       :

       Defendant.      :

---

## DECISION AND ENTRY

---

Plaintiff Audra E. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

## I.    Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case[2], Plaintiff protectively filed her applications for Disability Insurance Benefits in September 2018 and for Supplemental Security Income benefits in March 2019, alleging disability due to several impairments, including bilateral club feet, right ankle replacement, right foot pain, low back pain, depression, and anxiety.  (Doc. #7-6, *PageID* #331). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Deborah F. Sanders.   Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. §§ 404.1520, 416.920.[3]  She reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful activity since June 15, 2017, the alleged onset date.

Step 2:    Plaintiff has the following severe impairments: chronic pain in the right lower extremity; status post failed right ankle reconstruction with multiple past surgeries reported; right cavovarus foot; right hind foot varus; left clubfoot status post correction; low back pain; radiculopathy, lumbosacral; carpal tunnel syndrome of the left wrist; De Quervain's tendinitis of the left wrist; mild degenerative joint disease of the bilateral thumbs; depression; anxiety; borderline personality disorder; obsessive compulsive disorder (OCD); and post-traumatic stress disorder (PTSD).

Step 3:    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[2] Plaintiff previously applied for benefits in 2014. Her claims were denied in an administrative decision on June 14, 2017. (Doc. 7-3, *PageID* #s 130-54).
[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Step 4:     Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of sedentary work… except she "can occasionally balance, stoop, kneel, and climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds; crouch; or crawl. She would avoid hazards, such as dangerous machinery or unprotected heights, as well as foot controls in the bilateral lower extremities. She would have no more than frequent fingering and no more than frequent handling with the left upper extremity. [Plaintiff] would be limited to simple routine tasks that do not require fast production rate pace or strict production quotas. She would be able to occasionally interact with others with occasional changes in the work setting, except she would have no tandem or shared tasks with co-workers, no over-the-shoulder supervision, and would have no interaction with the public in a customer service capacity."

Plaintiff is unable to perform any past relevant work.

Step 5:     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 75-88).  Based on these findings, the ALJ concluded that Plaintiff has not been disabled since June 15, 2017.  *Id.* at 88.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 72-88), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial

evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.   <u>Discussion</u>

In her Statement of Errors, Plaintiff raises three issues: (1) the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers, thereby making his appointment of the ALJ in this case Constitutionally defective; (2) the ALJ failed to properly evaluate the medical evidence in this matter and properly formulate her RFC; and (3) the ALJ failed to consider the appropriate listings at Step Three of the sequential evaluation and failed to consider that the combination of Plaintiff's severe impairments. (Docs. #8 and 10).

#### A.    **Constitutional Challenge**

In her first statement of error, Plaintiff alleges that 42 U.S.C. § 902(a)(3), which limits the President's power to remove the Commissioner of the Social Security Administration (SSA)

without cause, violates the separation of powers doctrine, and thus, former-Commissioner Andrew Saul's delegation of power to the ALJ who adjudicated Plaintiff's claim was defective. (Doc. #8, *PageID* #s 1293-96). As a result, Plaintiff contends that she is entitled to a *de novo* hearing before a new ALJ. *Id.*

At the outset, the undersigned notes that Plaintiff's claim is procedurally improper as it raises Constitutional claims that were not initially set forth in her Complaint. (*See* Doc. #1). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." While the complaint need not provide "detailed factual allegations," it does "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action [.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, at minimum, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

In this case, Plaintiff bases her Constitutional challenge on, *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020), a United States Supreme Court case that was decided on June 20, 2020. (Doc. #8, *PageID* #s 1293-96). Despite the almost two years between the issuance of this case and the initiation of the current suit, Plaintiff failed to set forth any facts or law related to her Constitutional claim in her March 29, 2022 Complaint. (*See* Doc. #1). As a result, the undersigned finds that Plaintiff failed to provide fair notice to the Commissioner of this Constitutional claim, in violation of Federal Rule of Civil Procedure 8(a)(2), thus making her claim procedurally improper. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL

5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).

Moreover, Plaintiff's Constitutional claim also fails on substantive grounds. In *Seila Law*, the case upon which Plaintiff bases her claim, the Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197.

Here, the parties agree that 42 U.S.C. § 902(a)(3), the statute that governs removal of the Commissioner of the SSA, contains a similar restriction on the President's removal authority, and is therefore, unconstitutional to the extent it limits the President's authority to remove the Commissioner of the SSA without cause. (Doc. #8, *PageID* #1293-1294; Doc. #9, *PageID* #1315). In turn, Plaintiff alleges that former-Commissioner Andrew Saul's appointment violated the principle of separation of powers, thereby depriving him of authority to carry out any functions of his office, including the delegation of authority to the ALJ who adjudicated Plaintiff's application. (Doc. #8, *PageID* #1294). As a result, Plaintiff claims that she is entitled to a *de novo* hearing before a new ALJ. *Id.*

What Plaintiff fails to recognize, however, is that, even if the removal provision in § 902(a)(3) is stricken, the SSA would still be capable of functioning independently. *Alice A. v.*

*Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (rejecting the plaintiff's separation of powers claim, in part, because, even if § 902(a)(3) was unconstitutional, it was severable from the remainder of the statutes governing the SSA); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same).

Further, even assuming that the removal provision in § 902(a)(3) is unconstitutional, it does mean that Plaintiff is entitled to a new hearing. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787; *see also Id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See Id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to the plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause).

In this case, Plaintiff has made no showing of compensable harm. Instead, she broadly asserts that "Plaintiff was harmed by the improper appointment of the Commissioner and the

7

modifications which were implemented during Saul's tenure as commissioner." (Doc. #8, *PageID* #s 1294-95).  Here, she points out that the notice terminating the Commissioner indicated that he had "undermined and politicized Social Security disability benefits." *Id*. at 1296.  Thus, Plaintiff infers that Commissioner Saul's established policy and adjudication framework was the "primary and lead reason for President Biden's dissatisfaction[,]" which, in turn, suggests that President Biden believed the Commissioner had "infringed on the constitutional due process rights of disability applicants such as [Plaintiff]." *Id*.

Although "the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment," it is still possible for an unconstitutional statutory provision to inflict compensable harm entitling individuals to retrospective relief. *Collins*, 141 S.Ct. at 1788-89.  These circumstances, however, typically require that the President specifically acknowledge being prevented from removing an agency head because of the unconstitutional statutory provision. *See id*. at 1789.  Indeed, mere expressions of "displeasure" from the President, without more, do not demonstrate the type of compensable harm flowing from the removal provision contemplated by the Supreme Court in *Collins*.

In this case, Plaintiff has not alleged that the President "asserted that he would remove the [Commissioner] if the statute did not stand in the way." *Id*.  Instead, Plaintiff makes generalized statements and inferences about President Biden's displeasure but does not point to public statements expressly stating that he would remove the Commissioner, if not for the statute.  Thus, any argument Plaintiff makes to show compensable harm flowing from President Biden's inability to remove former Commissioner Saul due to the removal provision fails.

In short, under *Collins*, Plaintiff must show that the "existence of [the removal restriction] *alone* tainted" the administrative decision. *Decker Coal Co. v. Pehiringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (emphasis added). Plaintiff has only made generalized statements regarding the role of Commissioner Saul in establishing the processes and procedures related to the adjudication of her case. Again, as recognized by Justice Kagan in *Collins*, the President's choice of the SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Collins*, 141 S.Ct. at 1802 (Kagan, J., concurring) ("The SSA has a single head with for-cause removal protection ... But ... I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference."). As a result, Plaintiff has failed to show compensable harm and her first statement of error is without merit.

## B.    Medical Source Opinions

Plaintiff next argues that the ALJ erred in failing to address and weigh the opinions provided by Drew Travis, a provider at Access Ohio MHC of Excellence ("Access Ohio"). (Doc. #8, *PageID* #1297). Drew Travis, a social worker at Access Ohio, completed a Mental Impairment Questionnaire on December 29, 2016. (Doc. #7-8, *PageID* #s 676-79). In the questionnaire, Mr. Travis indicated that Plaintiff had 24 contacts with Access Ohio services, including counseling, nursing, physician and case management services, since April 29, 2016. *Id.* at 676. He described Plaintiff as having a "significant impairment in regard to her mental health symptoms. She has severe stressors that exacerbate symptoms." *Id.* Mr. Travis also reported Plaintiff as having numerous signs and symptoms, including anhedonia or pervasive loss of interest in almost all

9

activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; feelings of guilt or worthlessness; impairment in impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience; psychomotor agitation or retardation; pathological dependence or passivity or aggressivity; persistent disturbances of mood or affect; apprehensive expectation; paranoid thinking or inappropriate suspiciousness; recurrent obsessions or compulsions which are a source of marked distress; emotional withdrawal or isolation; persistent irrational fear of a specific object or activity or situation; intense and unstable interpersonal relationships with impulsive and damaging behavior; perceptual or thinking disturbances; emotional lability; flight of ideas; deeply ingrained maladaptive patterns of behavior; vigilance and scanning; pathologically inappropriate suspiciousness or hostility; easy distractibility; autonomic hyperactivity; memory impairment; sleep disturbance; and recurrent severe panic attacks. *Id.* at 677.

In addition, Mr. Travis indicated that Plaintiff has severe chronic pain due to her congenital ankle deformity and multiple surgeries. *Id.* at 678. He opined that Plaintiff has a marked limitation in her restrictions of daily living; extreme limitations in her ability to maintain social functioning as well as in her ability to maintain concentration, persistence or pace; and that she experiences one or two episodes of decompensation. *Id.* According to Mr. Travis, Plaintiff "has severe emotional difficulty, inability to cope at times, severe chronic pain, severe stressors of being homeless [and] inability to maintain own housing." *Id*. at 679. As a result, Mr. Travis opined that Plaintiff's anxiety related disorder would completely prevent her from functioning independently

and that her impairments or treatment would cause her to be absent from work more than four days per month. *Id.*

In acknowledging that the ALJ did not address any of the opinions provided by Mr. Travis, the Commissioner points out that the questionnaire was authored in December 2016, which was "about six months before Plaintiff's alleged onset date of June 15, 2017[.]" (Doc. #9, *PageID* #1325). Thus, according to the Commissioner, the ALJ's failure to address this opinion was not error as the "opinion was not relevant to the period at issue and there was no reason or requirement for the ALJ to consider it." *Id.* (citing *Grisier v. Comm'r of Soc. Sec.*, 721 F.App'x 473, 477 (6th Cir. 2018).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Because Plaintiff's claim for disability was filed in 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to

"explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

As noted by Plaintiff, ALJ Sanders did not address the opinions set forth in Mr. Travis' Mental Impairment Questionnaire, let alone discuss its persuasiveness or assign it any evidentiary weight. This constitutes error. The plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered at least the supportability and consistency factors for a medical's source's opinion.  *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20

C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether she needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth her rationale on what are deemed to be the two most important factors— supportability and consistency. *See id.*

Additionally, the Commissioner's attempt to excuse the ALJ's failure by pointing out that the opinion was provided six months prior to Plaintiff's alleged onset date and, therefore, not relevant to the period at issue, is unavailing. As an initial matter, the Sixth Circuit does "not endorse the position that all evidence or medical records predating the alleged date of the onset of disability ... are necessarily irrelevant or automatically barred from consideration[.]" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006). On the contrary, the Sixth Circuit "recognize[s] that evidence ... predating the onset of disability, when evaluated *in combination with later evidence*, may help establish disability." *Id.* (emphasis in original).

Further, the regulations themselves provide that "[w]e will consider all evidence in your case record when we make a determination or decision whether you are disabled[,]" 20 C.F.R. § 404.1520(a)(3), and that "[w]e will articulate in our determination or decision how persuasive we find *all of the medical opinions* and all of the prior administrative medical findings in your case record." 20 C.F.R. §1520c(b) (emphasis added). As a result, the mere fact that Mr. Travis authored his opinion six months before the alleged onset date is not, as alleged by the Commissioner, necessarily irrelevant and, in fact, may support Plaintiff's claim for disability when considered in

13

the context of the entire record. *See e.g.*, *Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (finding that the ALJ erred in failing to consider medical opinions predating a plaintiff's alleged onset disability); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (holding that the ALJ is required to consider all evidence predating an alleged onset date—and must specifically "discuss 'the significantly probative evidence [she] rejects.'"); *Daniel v. Colvin*, No. 1:14-CV-775, 2015 WL 5530210, at *4 (S.D. Ohio Sept. 21, 2015) (Beckwith, D.J.) ("Although Dr. Wunder issued his opinion before the alleged onset date of disability, it is not necessarily irrelevant and may support Plaintiff's disability claim when considered in the context of the entire record.").

Moreover, the fact remains that the probative value and relevance of Mr. Travis' opinions were issues to be articulated and resolved by the ALJ, not the Commissioner. "[I]t is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Romig v. Astrue*, No. 1:12-cv-1552, 2013 WL 1124669 at *6 (N.D. Ohio Mar. 18, 2013) (citations omitted). Under the current circumstances, the undersigned cannot determine whether ALJ Sanders ignored Mr. Travis' opinions for issues of relevance and probative value or if she simply failed to review the entire record. Again, it is the obligation of the ALJ "in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). As such, by simply ignoring the opinions set forth in Mr. Travis' Mental Impairment Questionnaire, ALJ Sanders failed to meet the minimum levels of articulation required by the regulations, thus frustrating the Court's ability to determine

whether Plaintiff's disability determination was supported by substantial evidence. *See Warren I*, 2021 WL 860506, at *8.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

**C.        Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to a remand to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

### IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's Statement of Errors (Doc. #8) is **GRANTED;**

2.  The Commissioner's non-disability finding is vacated;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3.  This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4.  The case is terminated on the Court's docket.


March 24, 2023                                          *s/Peter B. Silvain, Jr.*
                                                       Peter B. Silvain, Jr.
                                                       United States Magistrate Judge


16